| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFF** Guardian Alarm Services, Inc. | **DEFENDANTS** Robert Rossman |
| **ATTORNEYS** Scott M. Charmoy, Charmoy & Charmoy, 1700 Post Road, Suite C-9, Fairfield, CT 06824, 203-255-8100 | **ATTORNEYS (If Known)** |
| **PARTY** (Check one box only) ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin  X Creditor  ☐ Other  ☐ Trustee | **PARTY** (Check one box only) X Debtor  ☐ U.S. Trustee/Bankruptcy Admin  ☐ Creditor  ☐ Other  ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)  Nondischargeability under §523(a)(2), (a)(4), and (a)(6).

## NATURE OF SUIT
(Number up to five boxes, starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) Recovery of Money/Property**
☐ 11-Recovery of Money/Property -S. 542 Turnover of Property
☐ 12-Recovery of Money/Property- S. 547 Preference
☐ 13-Recovery of Money/Property- S. 548 Fraudulent Conveyance
☐ 14-Recovery of Money/Property- Other

**FRBP 7001(2) Validity, Priority or Extent of Lien**
☐ 21-Validity, Priority or Extent of Lien or other interest in property

**FRBP 7001(3) Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and a co-owner -S. 363(h)

**FRBP 7001(4) Objection/Revocation of Discharge**
☐ 41-Objection/revocation of discharge -S. 727(c),(d),(e)

**FRBP 7001(5) Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) Dischargeability**
☐ 66-Dischargeability - §523(a)(1), (14), (14a) priority tax claims
X 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
X 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**continued next column**

**FRBP 7001(6) Dischargeability Continued**
☐ 61-Dischargeability - S. 523(a)(5), domestic support
X 68-Dischargeability - S. 523(a)(6), willful and malicious injury
☐ 63-Dischargeability - S. 523(a)(8), student loan
☐ 64-Dischargeability - S. 523(a)(15), divorce or separation agreement    (other than domestic support)
☐ 65-Dischargeability -other

**FRBP 7001(7) Injunctive relief**
☐ 71-Injunctive relief - reinstatement of stay
☐ 72-Injunctive relief - other

**FRBP 7001(8) Subordination of claim or interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of removed action**
☐ 01-Determination of removed action

**Other**
☐ SS-SSIPA case 15 U.S.C. S. 78aaa *et seq.*
☐ Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a Class Action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in the complaint | Demand: $ |

Other relief sought:

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| **NAME OF DEBTOR**<br>Robert Rossman | | **BANKRUPTCY CASE NO.**<br>17-51160 | |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Connecticut | **DIVISIONAL OFFICE**<br>Bridgeport | **NAME OF JUDGE**<br>Manning, Hon. Julie | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** | |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** | |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)**<br>/s/ *Scott M. Charmoy* | | | |
| **DATE**<br>3/7/18 | **NAME OF ATTORNEY OR PLAINTIFF**<br>Scott Charmoy | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.   The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| IN RE: | ) | No. 17-51160 |
| Robert Rossman | ) | Chapter 7 |
| Debtor | ) | |
| Guardian Alarm Services, Inc. | ) | Adv. No. |
| Plaintiff | ) | |
| vs. | ) | |
| Robert Rossman | ) | |
| Defendant | ) | March 7, 2018 |

**NONDISCHARGEABILITY COMPLAINT**

**FIRST COUNT**

1. This Court has jurisdiction in this matter by virtue of 28 U.S.C. 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)().

2. The Defendant filed for relief under Chapter 7 on September 22, 2017.

3. In and prior to February 1997, Defendant and Jerome Terracino were employees, directors and officers of Guardian Systems, Inc. ("Guardian").

4. In his capacity as an employee, officer and director of Guardian, Defendant owed certain fiduciary duties to Terracino, including a duty to carry out his responsibilities as an employee, officer and director competently and honestly, a duty of loyalty and care as between directors and officers, a duty of loyalty and care to the corporation, and a duty to act in good faith pursuant to C.G.S. §§33-756 and 33-765.

5. In February, 1997 Defendant was a 25% equity shareholder of Guardian, and in that capacity he owed similar fiduciary duties to Guardian and Jerome Terracino, a 75%

shareholder of Guardian.

6.     In or about February, 1997, and in the months prior thereto, Defendant, while serving as employee, officer and director of Guardian, and while holding a shareholder interest in Guardian, engaged in a variety of dishonest and disloyal acts with the assistance of his wife and certain other employees of Guardian, which harmed Guardian and Terracino, including but not limited to:

   a.   Stealing customers, sales leads and sales opportunities from Guardian and diverting them to his own alarm company;

   b.   Stealing computer codes from Guardian which were necessary to operate Guardian's computer software;

   c.   Obtaining and using for a competitive advantage certain confidential computerized customer records, thereby allowing him to build his own business before he was terminated from Guardian;

   d.   Stealing assets and revenues of Guardian to pay personal expenses and debts, thereby reducing Guardian's value, including the value of its stock;

   e.   Interfering with employment relationships between Guardian and its employees, and coercing said employees to leave the employ of Guardian;

   f.   Stealing and concealing corporate funds of Guardian;

   g.   Making intentional and concerted efforts to wreck and loot Guardian so that Terracino, the only remaining shareholder, would get little or nothing out of his assets or his ownership interest in the company.

7.     On March 18, 1997, Defendant was terminated as an employee, officer and director of Guardian after Terracino learned of the dishonest and disloyal conduct carried out by

Defendant.

8. Prior to and after his dismissal, Defendant continued to use confidential information stolen from Guardian to interfere with Guardian customer relationships by convincing Guardian customers to terminate their contracts with Guardian and to switch their accounts from Guardian to United Alarm Company, a company owned and/or controlled by Defendant.

9. In speaking with Guardian customers, Defendant made negative and harmful statements about Guardian and Terracino which were false and were known to be false by Defendant when made, all in an effort to persuade said customers to terminate their contractual agreements with Guardian and switch to United Alarm, and to terminate their business relationships and dealings with Terracino.

10. In a further effort to coerce Guardian customers to switch their accounts, Defendant told various Guardian customers that they could breach their monitoring and service contracts with Guardian without penalty, although he knew that such statements were false when they were made.

11. In those circumstances where a Guardian customer was coerced to switch over to Defendant's company, Defendant used the confidential security code information stolen from Guardian to switch the codes in the security system of the customer from Guardian codes to his company's codes.  Further, he obtained and utilized a "zapper," a piece of equipment which allows an alarm installer or technician to delete the secret codes installed by Guardian from the homeowner's alarm system and return the system to default codes, for the sole purpose of carrying out this improper switching and theft of accounts.

12. On or about August 29, 1997 Guardian sold almost all of its assets to Plaintiff, including all its alarm monitoring and maintenance accounts.

13. After August 29, 1997 Defendant continued to carry out devious, dishonest and fraudulent conduct against Plaintiff in order to steal its accounts for his own company, United Alarm.

14. The purpose of this conduct was to diminish Plaintiff's value and to build the volume, revenues and worth of United Alarm at the expense of Plaintiff.

15. Defendant's actions include the following, all of which were intended and designed to harm Plaintiff and its shareholders:

   a. He used his influence and intentional misrepresentations to steal Plaintiff's customers and sales opportunities and divert them to his own alarm company;

   b. Used the computer codes for customer accounts, which codes were stolen from Plaintiff, to convert customer accounts acquired by Plaintiff from Guardian; ;

   c. Used confidential customer lists and customer information to gain a competitive advantage for his new company, United Alarm;

   d. Made intentional and concerted efforts to wreck and loot Plaintiff so that the company would be devalued and forced to cease operations, thus allowing Defendant to secure the remaining accounts of Plaintiff for his new company, United Alarm, at little or no cost;

   e. Used the confidential information stolen from Plaintiff to identity and convince Plaintiff's customers to terminate their contracts and switch their accounts from Plaintiff to United Alarm.

  f. Made negative statements about Plaintiff and its employees, which statements were false and known to be false by Defendant when made, all in an effort to persuade Plaintiff's customers to terminate their contractual agreements and switch to United Alarm.

  g. Advised Plaintiff's customers that they could breach their monitoring and service contracts without penalty and switch to United Alarm, although he knew that such statements were false when they were made; and

  h. In those circumstances where Plaintiff's customer was coerced to switch over to Defendant's company, Defendant used the confidential code information stolen from Guardian and/or Plaintiff to switch the codes in the customer's security system to his company's codes. Further, he utilized a "zapper," a piece of equipment which allows an alarm installer or technician to cause the secret codes installed by Plaintiff to be deleted from the homeowner's alarm system and return the system to default codes, for the sole purpose of carrying out this improper switching and theft of accounts.

  16. Since September 1997 Defendant, either individually or by his agents, servants and employees, stole approximately 200 accounts from Plaintiff utilizing the above-described methods and procedures, and coerced numerous builders to divert their business referrals from Plaintiff to United Alarm, all to the detriment and loss of Plaintiff.

  17. As a result of Defendant's conduct as aforesaid, Plaintiff suffered lost accounts, lost profits, and lost revenues, and was also forced to incur substantial costs and expenses, including legal fees, to defend itself against Defendant's scurrilous and fraudulent conduct, all to its detriment.

18. Defendant's actions, in coercing Plaintiff's customers to switch their accounts to Defendant's company, were improper and constitute tortious interference with the contractual relationships existing between Plaintiff and its customers.

19. Further, Defendant's actions in coercing Plaintiff's employees to leave Plaintiff and commence employment with his company also constituted tortious interference with the employment agreements between Plaintiff and its employees.

20. The purpose of Defendant's actions were to wreck and loot the corporation to its detriment, thus devaluing the company's assets and leaving its shareholders with a reduced share value in the corporation.

21. As a result of Defendant's conduct in this regard, Plaintiff and its shareholders suffered harm and claim damages

22. Defendant, Terracino and Guardian were co-guarantors of a Promissory Note signed by Mutual Communications Associates, Inc. on July 19, 1991 in favor of Brookfield Bank to borrow $270,000.

23. ln early 1997 Defendant told Terracino he was negotiating with the noteholder to obtain title to the note at a discounted rate, with the express intention of retiring the note and thus the obligations each of them had as guarantors of the note.

24. Defendant and Terracino's intentions were always to work together to obtain the note and retire the guarantor obligations.

25. In June, 1997 Defendant, with the assistance of his attorney Andrew Buzzi, negotiated the purchase of the note with the noteholder with the intention of obtaining the note for himself, without the participation of Terracino or Guardian.

26.     Defendant's intent in purchasing the note for himself was to enforce it against his co- guarantors Terracino and Guardian or to use it as leverage against Terracino and Guardian to take further customer accounts from Guardian for his own business, United Alarm.

27.     On July 9, 1997, the note was sold for $30,000.00 to Andrew J. Buzzi, Trustee, who was acting on behalf of, and as Trustee for, Defendant, and the note was thereafter assigned for no consideration to Consolidated Asset Management, LLC, a limited liability company formed by Buzzi and Defendant's wife Catherine Rossman.

28.     Consolidated Asset Management held the note for approximately 15 months, during which time Rossman, Buzzi and Catherine Rossman made repeated demands upon Guardian and Terracino to pay substantial sums to Rossman to retire the note. When Guardian and Terracino refused to pay such substantial sums, Buzzi and Catherine Rossman, through Consolidated, sold the note for $40,000.00 to Fairway Asset Management.

29.     Subsequently Fairway Asset Management pursued collection of the note and, in September 1999, was awarded judgment of approximately $325,000.00 on the note against Defendant, Terracino and Guardian as guarantors.

30.     At all times relating to the negotiation, purchase and sale of the note, Buzzi and Defendant's wife were acting at Defendant's request and for his benefit.

31.     Subsequent to July 1997 but prior to October 1998, Defendant disposed of all assets in his name to ensure that he was 'judgment proof', then instructed and/or permitted Buzzi and Catherine Defendant to sell the note to Fairway without fear of any financial liability or exposure to Defendant. Upon information and belief, Consolidated also obtained a verbal agreement from Fairway Asset Management that it would not pursue any collection action against Rossman for payment of the note.

32. At all times, Defendant controlled the purchase and sale of the note and intended for the note to be enforced against Terracino and Guardian by Fairway, to their detriment, so that Guardian would be forced to cease operations and he could take all the Guardian customer accounts for his own company's benefit.

33. At all relevant times, Defendant had the opportunity, and owed Guardian and Terracino a fiduciary duty, to retire the note by acquiring it himself or by instructing his agents, Andrew J. Buzzi, Trustee and/or Consolidated Asset Management to retire the note and, if appropriate, seek contributions toward the purchase price of the note from Guardian and Terracino, but he failed to do so.

34. Defendant's failure to acquire the note or arrange for an assignment of the note from Consolidated in order to protect himself, Terracino and Guardian from the full amount of the debt, constituted a breach of his fiduciary obligations as a director, officer and shareholder of Guardian to his fellow directors, officers and shareholders.

35. As a result of Defendant's failure to act as set forth above, Rossman profited from his acquisition of the note and Terracino and Guardian were harmed in that a judgment was rendered against them and their assets, personal and corporate, were exposed and subject to execution by Fairway Asset Management.

36. As a further result of Defendant's actions, Guardian and Terracino have incurred substantial costs, including attorney's fees, to defend themselves against Fairway's claims, all to their detriment, and a judgment in favor of Fairway Asset Management remains pending against them.

37. Based on the above events, Defendant commenced an action against Patricia Morasco, Terracino's wife and the sole owner of Plaintiff, along with Terracino and Plaintiff for

breach of fiduciary duty, amongst other causes of action, in the Connecticut Superior Court in an action captioned <u>Defendant vs. Patricia Morasco</u>, et al, X08-CV01-0183603-S.

38. Plaintiff counterclaimed in said case based on the above allegations and claiming damages for, among other things, tortious inference with business expectancy and/or contract, unjust enrichment and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

39. The matter was tried to a jury in 2005. The jury found in favor of Defendant on his breach of fiduciary duty count against Terracino, but determined damages were zero. The jury found in favor of Plaintiff and against Defendant on the claims of tortious interference in the amount of $25,000, unjust enrichment in the amount of $25,000, and CUTPA violations in the amount of $75,000.00.

40. As a result of post-verdict motions, Defendant was found liable for $42,438.50 of the Plaintiff's attorneys fees incurred in prosecuting the CUTPA violations, and for punitive damages in the amount of $25,000.

41. Defendant obtained Plaintiff's property, including without limitation its customer accounts, and committed the above acts through false pretenses, a false representation, or actual fraud.

42. The amounts owing to Plaintiff are nondischargeable pursuant to §523(a)(2)(A)

**SECOND COUNT**

1-42. The allegations contained in Paragraphs 1 through 42 of the First Count are realleged and reincorporated as Paragraphs 1-42 of this Count.

43. Defendant owed Plaintiff a fiduciary duty during the time of the above described events.

44. Defendant fraudulently breached a fiduciary duty to Plaintiff within the meaning of §523(a)(4).

45. Defendant committed defalcation as to Plaintiff within the meaning of §523(a)(4).

46. Defendant committed larceny and/or embezzlement as to Plaintiff within the meaning of §523(a)(4).

**THIRD COUNT**

1-42. The allegations contained in Paragraphs 1 through 42 of the First Count are realleged and reincorporated as Paragraphs 1-42 of this Count.

43. Defendant caused a willful and malicious injury to Plaintiff and/or its property.

44. The amounts owing Plaintiff are nondischargeable pursuant to §523(a)(6).

**WHEREFORE**, Plaintiff requests the following relief be granted:

1. A determination that its judgment against Defendant is nondischargeable within the meaning of §523(a)(2)

2. A determination that its judgment against Defendant is nondischargeable within the meaning of §523(a)(4)

3. A determination that its judgment against Defendant is nondischargeable within the meaning of §523(a)(6)

                                      **PLAINTIFF**

_____/s/_____
Scott M. Charmoy, Esq.   CT15889
Charmoy & Charmoy
1700 Post Road, Suite C-9
Fairfield, CT  06824
(203) 255-8100
Fax (203)-25-8101
scottcharmoy@charmoy.com