# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | : | Chapter 7 |
| | : | |
| Robert Rossman | : | Case No. 17-51160 |
|     Debtor | : | |
| | : | |
| Guardian Alarm Services, Inc. | : | Adv. Proc. No. 18-05010 |
|     Plaintiff | : | |
|     v. | : | |
| | : | |
| Robert Rossman | : | |
|     Defendant | : | August 31, 2018 |

## OBJECTION TO MOTION FOR SUMMARY JUDGMENT

**I.    BACKGROUND AND FACTS.**

A.    Mr. Rossman and his uncle, Jerome Terracino began a business relationship in the 1990's and formed Guardian Alarm Systems, Inc. ("Systems"). The relationship did not last. On or about early 1997 Mr. Terracino called a secret company meeting and intentionally failed to notify Mr. Rossman. At the meeting he and others allied with him, including his family members, voted to transfer <u>all</u> of Systems assets to a newly formed entity called Guardian Alarm Services, Inc. ("Services") . The so-called consideration was the princely sum of $5,000.00. Ms. Morasco became the owner of the vast majority of the stock in Services. Mr. Rossman's ownership interest was thereby greatly diluted and he was left with an ownership value of near zero. He was never offered or made an owner of Services and he was then fired. He had no income and a family to support.

After he was forced out of Systems, Mr. Rossman began working at a new venture, of which he was never an owner. He filed suit against various Defendants in

2000 in which he alleged, *inter alia*, a breach of fiduciary duty.

As the Plaintiff sets forth, it did file a counterclaim which with a number counts, some of which were stricken by the Court, including two separate claims for breach of fiduciary duty.

Guardian Alarm Services, Inc. <u>never</u> filed suit alleging fraud, there was never a count in its counterclaim based on fraud and the jury verdict never awarded judgment to Services based on fraud. Furthermore, the counterclaim did not go to trial based on any cause of action based on a breach of fiduciary duty. Judgment had previously entered in favor of Rossman as to all allegations of breach of fiduciary duty. Therefore, the Plaintiff in the instant case amended its Complaint on July 27, 2018 to delete its prior incorrect references to breach of fiduciary duty.

**B.     The State Court allegations.**

Annexed as **Exhibit A** is the final version of the Counterclaim on which trial proceeded dated May 10, 2002.

The Second Count is entitled "Corporate Derivative Claim". Such a claim is one which individual owners of a corporation file in lieu of the corporation when it refuses to do so, after demand by the owners. The Appellate Court decision states that, " The court treated the corporate derivative claim and the tortious interference claim as composing one count" <u>Rossman v Morasco,</u> 115 Conn. App. 234,237, n.1 (2009). The derivative count was not submitted to the jury separately.

The Third Count is labeled Constructive Trust. The trial court entered judgment in favor of Rossman on this count. See **Exhibit B**, Memo. of Decision, July 31, 2006.

The Fourth Count is Tortious Interference. It incorporates Paragraph's 1-5 of the Second Count. The jury awarded Services $25,000.00 on this count. See **Exhibit C**, Jury Verdict Form.

The Sixth Count is the CUTPA claim. All allegations based on breach of fiduciary duty were deleted from the Sixth count. Paragraph's 1-5 of the Second Count were incorporated. The jury awarded $75,000.00 on this count. The Court later awarded attorney's fees of $42,438.50 and punitive damages of $25,000.00. See Exhibits B and C.

The jury also found in favor of Rossman against Terracino for his breach of his fiduciary owed to Rossman but did not award Rossman any damages for that breach.

## II. LAW AND ARGUMENT

### C. Summary of Judgment Standards.

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7056, a moving party is entitled to summary judgment if it can "show that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it "might affect the outcome of the suit under the governing law, 'and a factual dispute is genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Celotex, 477 U.S. at 322-23. The evidence on each material element of its

claim or defense must be sufficient to entitle the moving party to relief as a matter of law. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its initial burden, the opposing party must then produce " specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; see Fed.R.Civ.P. 56 ( c). In determining whether there exists a genuine dispute as to a material fact, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F.3d 158, 162 (2d Cir. 2006) (citing *Anderson*, 477 U.S. at 249 (1986)).

### D. Collateral Estoppel Standards.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); see Marvel Characters, Inc. v Simon, 310 F.3d 280, 288 (2d Cir. 2002) ("[c]ollateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." ). 560 B.R. 647. Collateral estoppel applies in a non-dischargeability action.

Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[i]f the preponderance standard also governs the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the

claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." ); see also Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006); Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006).

"A creditor seeking to establish nondischargeability under § 523(a) must do so by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Parties may invoke collateral estoppel to preclude relitigation of the elements necessary to meet a § 523(a) exception. *Id.* at 285 n. 11, 111 S.Ct. 654; see also, e.g., *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997)". ("Collateral estoppel is applicable if the facts established by the previous judgment . . . meet the requirements of nondischargeability ...."). Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that "(1) the *identical* issue was raised in a previous proceeding; (2) the issue was *actually* litigated and decided in the previous proceeding; (3) the party had a full and fair *opportunity* to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Purdy v. Zeldes, 337 F.3d 253, 258 & n.5 (2d Cir. 2003) (internal quotation marks omitted)". Ball, @69.

> **E.    The Plaintiff cannot assert collateral estoppel to except a debt from discharge based on a cause of action that never existed, as to which there is no underlying case or judgment and which is 20 years old and thus time barred.**

The Code defines nondischargeable fraud as follows: Actual Fraud - 11 U.S.C. § 523(a)(2)(A). Under § 523(a)(2)(A), a debtor is not discharged from a debt:  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -- (A) false pretenses, a false representation, or actual fraud, other

than a statement respecting the debtor's or an insider's financial condition.

The elements of a fraud nondischargeability case are well known. Pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor seeking to except a debt from discharge under this provision must prove: (I) that the debtor made a false representation; (ii) that at the time made, the debtor knew the statement was false; (iii) the misrepresentation was made with an intent to deceive; (iv) that the creditor reasonably relied on that misrepresentation; and (v) that the creditor was damaged as a result of the misrepresentation. In re Wisell, 494 B.R. 23, 37 (Bankr. E.D.N.Y. 2011); In re Schulman, 196 B.R. 688, 693 (Bankr. S.D.N.Y. 1996). The burden of proof in an action to determine dischargeability is on the creditor to prove the elements of its nondischargeability complaint by a preponderance of the evidence. See, e.g., Grogan, 498 U.S. at 286; In re Renshaw, 222 F.3d 82, 86 (2d Cir. 2000).

The plaintiff-creditor must prove that it was defrauded based on these legal criteria. It must satisfy the elements set forth in Ball *supra*. However, the plaintiff never alleged in the state court case that it was defrauded and its complaint never included a fraud cause of action. Therefore it is impossible for the plaintiff to now rely on the prior judgment in order to apply the rules of collateral estoppel. No such judgment exists.

Furthermore, to the extent that the plaintiff may attempt to assert that it need not rely on collateral estoppel (even though it does not make that argument) in order to assert fraud as a basis for nondischargeability, that argument also fails. The plaintiff has only devoted one page of its 20 page motion/memorandum on fraud. The facts which gave rise to the original lawsuit are now 20-25 years old. Therefore the plaintiff is attempting to assert a claim that it was defrauded 16- 21 years after the expiration of

the statute of limitations or repose on fraud claims under state law. See Conn. Gen Stat. Sec.52-552j. "Extinguishment of cause of action" providing for a 4 year statute for the commencement of suit or the cause of action is extinguished.

There are two statute of limitations issues in the § 523(a) context. Banks v. Gill Distribution Ctrs., Inc. (*In re Banks*), 263 F.3d 862, 868 (9th Cir. 2001). One arises under Federal Rule of Bankruptcy Procedure 4007 (c) and is a deadline for filing the § 523(a) complaint. Id. That one is met here and is not at issue. The other relates to the underlying debt which the plaintiff seeks to have declared non-dischargeable. "[T]he establishment of the debt itself ... is subject to the applicable state statue of limitations." Id. Thus, "[a] debt barred by the applicable state statute of limitations will not support a dischargeability action." In re Moore, 2014 WL 3570600 (Bankr. E.D. Cal. 2014) (citing *Banks*, 263 F.3d at 868)).

Under Connecticut law, C.G.S. § 52-577 provides "no action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." C.G.S. § 52-552j provides for a 4 year statue of repose.

A debtor's liability on a pre-petition claim must be determined on the strength of the claim's factual and legal underpinnings as they existed immediately prior to the order for relief in bankruptcy. Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 169 (1946). Further, such liability is determined by reference to the applicable non-bankruptcy law under which such rights and duties were created. Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15 (2000) ("Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation...")

"Section 52–577 is a statute of repose that sets a fixed limit after which the tortfeasor will not be held liable.... (Internal quotation marks omitted.) *Pagan v. Gonzalez*, 113 Conn.App. 135, 139, 965 A.2d 582 (2009). 'The three year limitation period of § 52–577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury.... The relevant date of the act or omission complained of, as that phrase is used in § 52–577, is the date when the negligent conduct of the defendant occurs and not the date when the plaintiffs first sustain damage.... Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation.' (Citations omitted; internal quotation marks omitted.) *Piteo v. Gottier*, 112 Conn.App. 441, 445–46, 963 A.2d 83 (2009)." Kidder v. Read, 150 Conn. App. 720, 726–27, 93 A.3d 599, 603 (2014).

The Plaintiff's claims against the Defendant are clearly time-barred, as they were never raised in the Superior Court action and are asserted here for the first time. The are 16-21 years past the applicable statute and cannot be revived, nor is there any argument that they were.

Therefore the plaintiff's claims asserted under Code Sec. 523(a)(2)(A) must fail.

    **F.**    **The plaintiff's effort to satisfy Federal law standards for nondischargeability based on the defendant's purported "intent" at the summary judgment stage fails; further the plaintiff also seeks to introduce evidence which then precludes reliance on collateral estoppel; and the maliciousness standard has not been established.**

"Under the Bankruptcy Code, discharge is not available for a debt "for willful and malicious injury by the debtor to another." 11 U.S.C. § 523(a)(6). As used in that section, the word "willful" indicates "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The injury caused by the debtor must also be malicious, meaning "wrongful and without just cause or excuse, even in the absence of

personal hatred, spite, or ill-will." In re Stelluti, 94 F.3d 84, 87 (2d Cir. 1996). Malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." Id. at 88 (alteration in original, internal quotation marks omitted)." Ball, @69. A key component of a finding of malice for purposes of Section 523(a)(6) is that the conduct at issue transcends ordinary norms of commercial behavior. The distinction drawn by one bankruptcy court decision is instructive. One bankruptcy court distinguished between the dischargeability of a judgment for damages, which arose from breach of contract and copyright and trademark infringement, and dischargeability of a judgment for contempt, which arose from " the blatant and willful contempt of court orders by the defendants, including the Debtor." Bundy Am. Corp. v. Blankfort (In re Blankfort), 217 B.R. 138, 146 (Bankr. S.D.N.Y. 1998). As to the former, the court found that where " [t]he Damages Judgment was based solely upon conduct of the defendants constituting breach of contract and copyright and trademark infringement, with no evidence of actual malice and no aggravating factor sufficient to deny the discharge normally granted to the 'honest but unfortunate' debtor," the plaintiffs were not entitled to summary judgment based on collateral estoppel with respect to the element of malice. In re Blankfort, 217 B.R. at 146. The court noted that " [t]he cases in which courts denied requests for non-dischargeability under § 523(a)(6) have as a common theme that persons of honest character could have committed the acts or mistakes which led to legal liability." In re Blankfort, 217 B.R. at 144. But as to the latter, the court reached a different conclusion. The court observed that " [u]nder the law in this Circuit, the element of malice may be found ... upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor," and found 576 B.R. 43 that with respect to a separate contempt judgment, " the blatant and willful contempt of court orders by the defendants, including the Debtor, which is binding upon this Court under the doctrine of collateral estoppel, constitutes the type of aggravated misconduct which warrants an imputation of malice within the meaning of section 523(a)(6)." In re Blankfort, 217 B.R. at 146."
In re Lin, 576 B.R. 32,42 (EDNY) (2017).

Section C,3 of the plaintiff's motion regarding 523 (a)(6) argues for the application of collateral estoppel and attempts to satisfy its burden under federal law by relying on several improper things. One, it attempts, in an abbreviated manner, to argue the defendant's intent based on some limited testimony it cherry picked from 1,500 pages of trial testimony; Two it attempts to prove its case here by now introducing evidence instead of relying solely on the collateral estoppel effect of the prior judgment; Three it violates the very legal principal upon which it relies in this motion by inviting this court to retry the entire case by reviewing vast amounts of trial testimony from the state court case.

Pages 11-14 contain a very limited excerpt of trial testimony from the state court

case which is apparently included in an effort to prove that Rossman had the "intent" to commit a willful and malicious injury. The plaintiff is forced to rely on an intent argument because the state court judgment does not satisfy the federal law standards for willful and malicious injury and the jury verdict does not provide any insight as to what the jury relied on or concluded about the defendant's actions.

"Courts must be cautious in determining issues that involve a person's state of mind when deciding a case at the summary judgment stage. *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir.1990), vacated on other grounds, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Cases involving state of mind issues are not always inappropriate for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). However, "summary judgment is particularly inappropriate" when an individual's intent is at issue. *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir.2002) 383 B.R. 656 (quoting *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir.1986)). Even where intent is at issue, "summary judgment is appropriate if all reasonable inferences defeat the claims of one side...." *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999) (quoting *Newman v. Checkrite Cal. Inc.*, 912 F.Supp. 1354, 1380 (E.D.Cal.1995)). In this case, however, as discussed below, all "reasonable inferences" do not necessarily "defeat the claims of one side." Because there is a genuine dispute as to the material issue of the Debtor's intent, summary judgment in favor of the Debtor was inappropriate." In re Swegan, 383 B.R. 646, 656(Cir. BAP. 2008). "Because intent is difficult to establish on a summary judgment basis, courts rarely grant judgment on such claims. *In re Bottone*, 209 B.R. 257, 264 (Bankr. D. Mass. 1997). In this case, the record regarding the Debtor's intent is insufficient for this Court to grant summary judgment to the Plaintiffs on their § 727(a)(4)(A) claim." In re Mihalatos, 527 B.R. 55, (2015)

To make this assessment, "a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.2005).

"In addition, credibility assessments are rarely appropriate at the summary judgment stage, and should be reserved for the finder of fact at trial. As the Second

Circuit observed, "[i]t is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir.2006) (internal quotation marks and alterations omitted). See Kwon, 606 F.Supp.2d at 355-56 ("A court must neither make judgments regarding credibility or conflicting versions of events, nor engage in any weighing of the evidence," because on summary judgment the court is not " tasked     with resolving disputed issues of fact, but instead with determining whether any genuine issues of material fact remain to be tried")... While the issue of fraudulent intent ordinarily cannot be resolved on summary judgment, "it is also well-recognized that the summary judgment rule would be rendered sterile if the mere incantation of intent would operate as a talisman to defeat an otherwise valid motion." In re Jacobs, 394 B.R. at 658 (internal quotation marks and ellipses omitted). See Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir.1988) (finding that when intent is at issue, "summary judgment should be used sparingly" but that the" plaintiff must nevertheless offer 'concrete evidence from which a reasonable juror could return a verdict in his favor' ") (quoting Anderson, 477 U.S. at 256, 106 S.Ct. 2505)." In re Allou Distributors, Inc., 446 B.R. 32, 50 (2011).

Issues of intent can rarely be resolved on summary judgment. In re Chavin, 150 F.3d 726 (7th Cir. 1998).

Because of the deficiencies in the record the plaintiff cannot satisfy its substantial burden at summary judgment to prove that the state court judgment satisfies the federal standards to except a debt from discharge.  The case of In re Lin, 576 B.R. 32, (EDNY) (2017) provides an especially thorough review of the evidentiary requirements the plaintiff must meet.  Ultimately the Lin court concluded that the plaintiff failed at the summary judgment stage to prove that an identity of issues existed sufficient to satisfy the maliciousness standard.

"A key component of a finding of malice for purposes of Section 523(a)(6) is that the conduct at issue transcends ordinary norms of commercial behavior. The distinction

drawn by one bankruptcy court decision is instructive. One bankruptcy court distinguished between the dischargeability of a judgment for damages, which arose from breach of contract and copyright and trademark infringement, and dischargeability of a judgment for contempt, which arose from "the blatant and willful contempt of court orders by the defendants, including the Debtor." *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 146 (Bankr. S.D.N.Y. 1998). As to the former, the court found that where" [t]he Damages Judgment was based solely upon conduct of the defendants constituting breach of contract and copyright and trademark infringement, with no evidence of actual malice and no aggravating factor sufficient to deny the discharge normally granted to the 'honest but unfortunate' debtor," the plaintiffs were not entitled to summary judgment based on collateral estoppel with respect to the element of malice. *In re Blankfort*, 217 B.R. at 146. The court noted that "[t]he cases in which courts denied requests for non-dischargeability under § 523(a)(6) have as a common theme that persons of honest character could have committed the acts or mistakes which led to legal liability." *In re Blankfort*, 217 B.R. at 144. But as to the latter, the court reached a different conclusion. The court observed that "[u]nder the law in this Circuit, the element of malice may be found ... upon a finding of *aggravated, socially reprehensible conduct* sufficient to justify an imputation of malice to the debtor," and found 576 B.R. 43 that with respect to a separate contempt judgment, "the blatant and willful contempt of court orders by the defendants, including the Debtor, which is binding upon this Court under the doctrine of collateral estoppel, constitutes the type of aggravated misconduct which warrants an imputation of malice within the meaning of section 523(a)(6)." In re Blankfort, 217 B.R. at 146. In re Lin, 576 B.R. 32,42 (EDNY) (2017). [emphasis added]

"Identity of the issues is, as noted above, the starting point for determining whether collateral estoppel applies to bar a party from contesting an issue. Courts agree that direct identity is not required, and substantial identity will suffice. As the Supreme Court observed, relitigation will be barred where "the issues presented by this litigation are in substance the same as those resolved" in the prior case. *Montana*, 440 U.S. at 155, 99 S.Ct. 970. In the context of a Section 523(a)(6) claim, malice means "wrongful without just cause or excuse." *Ball*, 451 F.3d at 69 (quoting *In re Stelluti*, 94 F.3d at 87). This requires significantly more than a breach of contract or a failure to comply with a known duty. As one bankruptcy court found, "the element of malice may be found ... upon a finding of aggravated, socially reprehensible conduct." *In re Blankfort*, 217 B.R. at 144. And as that court observed, in those cases where the record shows that "persons of honest character could have committed the acts or mistakes which led to legal liability," the creditor's Section 523(a)(6) claim will fail and the debtor's obligation will be discharged. *Id.* As another bankruptcy court observed, "**malice may be inferred from conduct that has no potential for financial benefit to the debtor such that the debtor's only conceivable motive was 'to inflict harm upon the creditor.'** " *In re Orly*, 2016 WL 4376947, at *6 (quoting *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)). For these same reasons, the question of malice is a fact specific determination, and a court's decision should be informed by "the totality of the circumstances." " In re Bressler, 387 B.R. at 455. [ emphasis added].

Here the plaintiff relies solely on collateral estoppel to prove its case. However, in the absence of a written decision, the record is scant at best to glean whether or not the state court judgment satisfies the federal elements for nondischargeability. In fact, the state court's charge to the jury implies just the opposite; i.e., that the necessary elements were not met. The words "willful and malicious" were never used, only the word "tortious". Mere tortious conduct is totally inadequate to prove maliciousness and certainly is not "a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor" Lin, supra. It is improper for the plaintiff to invite the court to retry the entire case by laboriously reviewing 1,500 pages of trial transcripts. That is not collateral estoppel at all; it is a retrial of the underlying case by another court based on documents and no witness testimony.

Furthermore, in this regard the affidavit of Mr. Rossman annexed hereto sheds valuable light on the issue of intent. He states that after he was ousted from his company and Terracino diluted his shares to next to nothing, he had no way to support his family. He went into business and started all over again. He tried to round up new business for a start up operation from which he could earn commission income. He knocked on doors and made calls to prospective customers. His sole motivation was to earn a living to support his family and to survive. Thus his motive was driven solely by urgent ,pressing financial need; he was not motivated by a plan to inflict harm.

Consequently, the plaintiff cannot prevail on its claim that the necessary element of intent can be assumed or inferred from the bare record presented. It is quite inadequate for that purpose and therefore the requisite elements of a federal bankruptcy law cannot be proven at summary judgment.

**G.     The CUTPA count suffers from the same infirmities as set forth above ; moreover Cutpa violations can be based on any number of statutory elements which do not correspond to nondischargeable claims under Federal law.**

The plaintiff recites the standard for a Cutpa violation at p. 17. Importantly, such a violation can occur any one of these reasons and all need not be present. Therefore, a Cutpa violation can occur based on conduct that offends public policy, is unfair, immoral, unethical, unscrupulous, oppressive, if it causes substantial injury to competitors or by proof of an actual deceptive practice.

But not one of those terms translates into a basis for nondischargeability. Much more is needed to satisfy the federal standards for such. The plaintiff's argument which relies on Sec. 523 (a)(2) fails for all the reasons set forth in Sec. E above; there is no fraud judgment; it never existed and does not exist. The plaintiff's continued reliance on "fraud" is difficult to understand, at bare minimum. It is especially offensive for the plaintiff to categorically assert that the defendant committed "actual fraud" (p.18) when it is well known that no such thing was ever alleged, pled or proved. Therefore, one half of the plaintiff's argument in support of the nondischargeability of the Cutpa claim fails.

The plaintiff also relies on its 523 (a)(6) claim as a basis to support the nondischargeability of the Cutpa judgment. This argument suffers from all of the same infirmities identified above in Sec. F. The plaintiff definitely cannot rely on the non-existent breach of fiduciary claim since it was stricken from the plaintiff's prior counterclaim. Therefore, its inclusion in this section of the argument again is improper and inexplicable. The motion is fatally defective for the foregoing reasons alone.

The plaintiff leaps to a conclusion about what the jury's verdict is based on

absent any jury interrogatories or other evidence to establish what the actual basis was on which the jury relied its verdict.  Even if the court were to assume that the defendant tried to "wreck and loot" Services, that alone does not satisfy the federal law standards for a 523 (a)(6) violation.  The words "wreck and loot" have no legal meaning and are so vague and ambiguous as to be susceptible of many shades of interpretation.  As stated above, in order to rely on collateral estoppel to prevail, the plaintiff mut prove that the state court verdict supplies and satisfied all of the criteria for its application, i.e., that: the *identical* issue was raised in a previous proceeding; (2) the issue was *actually* litigated and decided in the previous proceeding; (3) the party had a full and fair *opportunity* to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Purdy v. Zeldes, 337 F.3d 253, 258 & n.5 (2d Cir. 2003) (internal quotation marks omitted)". Ball, @69.

The absence of all of these elements precludes reliance on them to sustain the plaintiff's burden, especially at the summary judgment stage when all inferences should be drawn in the defendant's favor.  Wherefore the plaintiff's motion should be denied.

DEBTOR/DEFENDANT,

BY: _____
James M. Nugent ct# 08822
Harlow, Adams & Friedman, P.C.
One New Haven Avenue, Suite 100
Milford, CT 06460
Tele No. (203)878-0661
Jmn@quidproquo.com

## CERTIFICATION

     The undersigned hereby certifies that on August 31, 2018, in accordance with Rules 7004, 9014 F. R. Bankr. P, a copy of the Objection to Motion for Summary Judgment was served on the following:

Scott M. Charmoy, scottcharmoy@charmoy.com
Attorney for Plaintiff

BY: _____
James M. Nugent   ct# 08822
Harlow, Adams & Friedman, P.C.
One New Haven Avenue, Suite 100
Milford, CT 06460
Tele No. (203)878-0661
Jmn@quidproquo.com

G:\USERS\TaraA\- nugent\Rossman\Aversary Proceeding - Guardian Alarm Services\Objection to Motion for Summary Judgment\Objection to Motion for Summary Judgment.wpd