UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | ) | Case No.    17-51160 |
| | ) | Chapter    7 |
| Robert Rossman, | ) | |
|     Debtor | ) | |
| | ) | |
| | ) | |
| | ) | |
| Guardian Alarm Services Inc., | ) | Adv. Pro. No. 18-05010 |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Robert Rossman, | ) | |
|     Defendant | ) | |
| | ) | ECF Nos. 14, 16 |

## APPEARANCES

Scott M. Charmoy
Charmoy & Charmoy                    *Attorney for the Plaintiff*
1700 Post Road, Suite C-9
Fairfield, CT 06824

James M. Nugent
Harlow, Adams, and Friedman          *Attorney for the Defendant*
One New Haven Ave, Suite 100
Milford, CT 06460

## MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT

Julie A. Manning, Chief United States Bankruptcy Judge

### I.    Introduction

In this adversary proceeding, Guardian Alarm Services, Inc. ("Guardian"), seeks to have a debt owed to it by Robert Rossman, (hereinafter the "Debtor" or "Rossman"), declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6). Guardian

moved for summary judgment on two counts of its complaint in reliance upon the allegedly preclusive effect of a jury verdict rendered in the Connecticut Superior Court. Rossman also filed a Motion for Summary Judgment with respect to the first count of the complaint. For the reasons discussed below, Guardian's motion is **GRANTED** and Rossman's motion is **DENIED.**

**II.    Jurisdiction**

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(l) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I).

**III.    Procedural History**

On September 22, 2017, Rossman filed a voluntary Chapter 7 petition. On March 8, 2018, Guardian initiated this adversary proceeding by filing a three-count complaint (the "Complaint"). The Complaint seeks a determination that Rossman's debt to Guardian is nondischargeable, in whole or in part, under the provisions of 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and or 523(a)(6).

On August 3, 2018, Guardian filed a Motion for Summary Judgment and supporting documents with respect to Counts One and Three of the Complaint, including a Local Civil Rule of the United States District for the District of Connecticut ("D. Conn. L. Civ. R.__") 56(a)(1) Statement. On August 31, 2018, Rossman filed an Objection to Guardian's Motion for Summary Judgment, but did not file a D. Conn. L. Civ. R. 56(a)(2) Statement. On August 31, 2018, Rossman also filed a Motion for Summary Judgment seeking summary judgment on

Count One of the Complaint and a D. Conn. L. Civ. R. 56(a)(1) Statement. On September 14, 2018, Guardian filed a response to Rossman's Motion for Summary Judgment, including the required D. Conn. L. Civ. R. 56(a)(2) Statement.

On November 7, 2018, a hearing was held on Guardian's Motion for Summary Judgment and Rossman's Motion for Summary Judgment. Due to certain issues raised during the hearing, the parties were invited to file supplemental briefs to address the potential collateral estoppel effect of the verdict entered in the Connecticut Superior Court. On December 7, 2018, Guardian filed a response brief and on January 7, 2019, Rossman filed a reply brief. Because Rossman did not comply with D. Conn. L. Civ. R. 56(a)(2) in response to Guardian's Motion for Summary Judgment, the Court entered an order granting Rossman leave to submit a D. Conn. L. Civ. R. 56(a)(2) Statement by February 11, 2019. Instead of filing a D. Conn. L. Civ. R. 56(a)(2) statement, Rossman refiled his D. Conn L. Civ. R. 56(a)(1) Statement on February 11, 2019.

### IV.    Undisputed Facts

A review of Guardian's Motion for Summary Judgment and documents appended thereto, Rossman's Motion for Summary Judgment and documents appended thereto, the parties' 56(a) Statements, the supplemental briefs, and the examination of the record in this bankruptcy case and adversary proceeding, establishes the following undisputed facts for the purposes of the pending Motions for Summary Judgment:

1. On or about April 2007, Rossman filed a Superior Court case against Guardian and other defendants, captioned *Rossman v. Morasco*, FST-CV01-0183603. The case was later assigned to the complex litigation docket, docket number X05-0183603-S (hereinafter "Superior Court Action"). Guardian filed counterclaims in the Superior Court Action asserting

loss of assets and tortuous [sic] interference, unjust enrichment, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA").

2. The claims and counterclaims in the Superior Court Action arose out of the business relationships among Rossman, Jerome Terracino, and Guardian, and were tried to a jury in July of 2005.

3. Guardian's counterclaims included a number of allegations, including allegations that Rossman made misrepresentations to steal Guardian's customers and divert sales opportunities to his own company, stole computer codes from Guardian to convert Guardian's customer accounts, obtained and used confidential customer lists for his own company, and falsely advised Guardian's customers to breach service contracts and switch to his company.

4. On all counts except for the breach of fiduciary duty count against Jerome Terracino, the jury returned a verdict against Rossman (the "Superior Court Verdict").

5. On the third, fourth, and sixth counterclaims, the jury returned a verdict in favor Guardian and against Rossman and awarded the following compensatory damages: $25,000.00 for the count of loss of assets and tortuous [sic] interference; $25,000.00 for the count of unjust enrichment; and $75,000.00 for the CUTPA count.

6. In reaching the Superior Court Verdict, the jury completed jury interrogatories, a judicial form on which the jury records the basis for its conclusions and verdict in a given case (the "Jury Interrogatories"). The Jury Interrogatories and the Superior Court Verdict were both appended to Guardian's Motion for Summary Judgment and their authenticity, accuracy, and admissibility are not disputed by the parties.

7. On January 6, 2006, Guardian moved for an award of attorney's fees pursuant to CUTPA as well as punitive damages and a constructive trust.

8. On July 31, 2006, the Superior Court issued a "Memorandum of Decision Re: Post Verdict Issues" and a final judgment (collectively, the "Superior Court Judgment"). The Superior Court Judgment awarded $125,000 in compensatory damages entered in accordance with the verdict and awarded Guardian $42,539.18 in attorney's fees and $25,000 in punitive damages.

9. Rossman appealed the Superior Court Verdict and the Superior Court Judgment in three separate appeals, bearing the docket numbers AC-27290, AC 279070, and AC 28442. In each appeal, the Appellate Court affirmed the decision in favor of Guardian.

10. Rossman filed a Chapter 7 case with this court on September 22, 2017. Guardian commenced this Adversary Proceeding on March 8, 2018.

**V.     Summary of Arguments**

The Superior Court Verdict resulted in a judgment in favor of Guardian on its loss of assets and tortious interference claim, its unjust enrichment claim, and its CUTPA claim. Guardian was also awarded punitive damages and attorney's fees in connection with the CUTPA claim. Guardian asserts that under collateral estoppel principles, summary judgment should enter in its favor on Counts One and Three of the Complaint due to the Superior Court Verdict and the Superior Court Judgment. Rossman asserts that summary judgment in favor of Guardian is not appropriate and that summary judgment should be granted in his favor because: (i) no cause of action for fraud existed in the Superior Court Action and any such claim is time barred; and (ii) the Superior Court Judgment lacks specific findings on Rossman's subjective intent. The Court will address each of the parties' arguments and responses to those arguments as they relate to the legal standards and allegations.[1]

---

[1] Neither Guardian nor Rossman address Count Two of the Complaint in their respective motions for summary judgment. As such, the Court will not address Count Two of the Complaint in this Memorandum of Decision.

5

**VI.     Discussion**

    **A.     Collateral Estoppel**

"Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir 2006). "It is well settled that preclusion principles apply in bankruptcy proceedings." *Evans v. Ottimo,* 469 F.3d 278, 281 (2d Cir. 2006); *In re Thompson,* 511 B.R. 20, 24 (Bankr. D. Conn. 2014).

"When determining the preclusive effect of a state court judgment, a court must apply the preclusive law of the rendering state." *Thompson,* 511 B.R. at 26 (quoting *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009)). Under Connecticut law, "collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 57–58 (2002). To be subject to collateral estoppel, an issue must have been (1) "fully and fairly litigated," (2) "actually decided," (3) "necessary to the judgment" in the first action, and (4) "identical" to the issue to be decided in the second action. *See Faraday*, 596 F. Supp. 2d 508, 515 (citing *State v. Joyner*, 255 Conn. 477, 490 (2001); *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 343 (2011). "As the Supreme Court observed, relitigation will be barred where 'the issues presented by this litigation are in substance the same as those resolved' in the prior case." *Guo Zhong Wu v.*

*Qiao Lin (In re Qiao Lin)*, 576 B.R. 32, 59 (Bankr. E.D.N.Y 2017) (quoting *Montana v United States*, 440 U.S. 147, 155 (1979)). Courts agree that direct identity is not required, and substantial identity will suffice." *Qiao Lin,* 576 B.R. at 59. The party seeking to utilize the doctrine of collateral estoppel has the ultimate burden of proving the elements necessary for its application." *Control Module, Inc. v. Dybowski (In re Dybowski)*, Ch. 7 Case No. 07-21152, Adv. Pro No. 07-02051, 2012 Bankr. LEXIS 2423, at *28-29; *Automated Salvage Transp. Co., v. Swirsky (In re Swirsky)*, 372 B.R. 551, 562 (Bankr. D. Conn. 2006).

### B.     Summary Judgment Standard

"Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by the Fed. R. Bankr. P. 7056, directs that '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Parris v. Delaney (In re Delaney),* 504 B.R. 738, 746 (Bankr. D. Conn. 2014) (internal quotations and alteration in original) (quoting Fed. R. Civ. P. 56(a)). For summary judgment purposes, a genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. *Mendoza v. Thompson (In re Thompson)*, Civil Action No. 3:14-CV-1094 (JCH), 2015 U.S. Dist. LEXIS 35390, at *5, 2015 WL 1280235 (citing *Riviera v. Rochester Genesee Reg'l Trasnsp. Auth.,* 702 F. 3d 685, 693 (2d Cir. 2012)). When considering a motion for summary judgment "the judge's function ... is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Delaney*, 504 B.R. at 746 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Furthermore, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994)).

At the summary judgment stage, the moving party bears the burden of showing that there are no material facts in dispute, and the court is to draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has met its burden, in order to defeat the motion, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *In re Affinity Health Care, Mgmt., Inc.*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goard,* 554 F.3d 255, 266 (2d Cir. 2009)). "[A] non-moving party must point to more than a mere 'scintilla' of evidence in order to defeat a Motion for Summary Judgment." *Affinity Health Care,* 499 B.R. at 251 (quoting *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008)).

### C.     Count Three: Nondischargeability under § 523(a)(6)

Guardian asks the Court to first address Count Three of the Complaint. In relevant part, § 523(a)(6) excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). To succeed on a § 523(a)(6) claim, a plaintiff must prove: (1) the debtor acted willfully; (2) the debtor acted maliciously; and (3) the "debtor's willful and malicious actions caused injury to the plaintiff or the plaintiff's property." *Salvatore v. Salvatore (In re Salvatore)*, 586 B.R. 371, 377 (Bankr. D. Conn. 2018) (citing *In re Powell*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017)). As is true in all dischargeability actions, the standard of proof in a § 523(a)(6) action is the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

To determine whether the issues involved in this adversary proceeding were directly addressed in the State Court Action, the provisions of § 523(a)(6) of the Bankruptcy Code must

be analyzed. "While neither 'willful' nor 'malicious' conduct is defined by the Bankruptcy Code, the United States Supreme Court has clarified that § 523(a)(6) renders non-dischargeable 'only acts done with actual intent to cause injury,' not merely 'acts, done intentionally, that cause injury.'" *Hamrah v. Couloute (In re Couloute)*, 538 B.R. 184, 190 (Bankr. D. Conn. 2015) (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). "The United States Court of Appeals for the Second Circuit has recognized that "[a]s used in section 523(a)(6), malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *3N Int'l, Inc. v. Carrano (In re Carrano),* 530 B.R. 540, 559 (Bankr. D. Conn 2015) (quoting *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996)).

Under Connecticut law, to succeed on a tortious interference claim the plaintiff must establish: (1) the existence of a contractual relationship or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) that the plaintiff suffered a loss as a result of the defendant's tortious conduct. *E.g., Kopperl v. Bain,* 23 F. Supp. 3d 97, 110 (2014) (citing *Rioux v. Barry,* 283 Conn. 338, 351 (2007)). The "tortious" element requires proof that "the defendant was guilty of fraud, misrepresentation, intimidation or molestation, or that the defendant acted maliciously." *Robert S. Weiss and Assocs., Inc. v. Wiederlight*, 208 Conn. 525, 535 (1988)). "The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." *Landmark Inv. Grp. v. Calco Constr. & Dev. Co.*, 318 Conn. 847, 869 (2015).

Because a successful § 523(a)(6) claim must prove acts done with actual intent to cause injury, and a tortious interference claim under Connecticut law requires a demonstration of malice on the part of a defendant, the issue of tortious conduct in a tortious interference claim is

identical to the issue of "willful and malicious" conduct in the context of a § 523(a)(6) claim. The Court finds the first prong of a collateral estoppel analysis is satisfied as the issues in a § 523(a)(6) action are identical in legal substance to the issues decided in the Superior Court Action.

In addition to the substantive identity of issues, the jury actually and necessarily decided Rossman's conduct was tortious and the Superior Court Verdict could not have been rendered without this finding. Thus, the issue is likewise deemed to have been actually and necessarily decided for collateral estoppel purposes. Lastly, Rossman was represented by counsel and pursued the full exhaustion of all appeals, demonstrating that the issue was fully and fairly litigated. As such, Rossman is collaterally estopped from challenging whether the conduct was willful and malicious under § 523(a)(6).

The Superior Court Verdict regarding the tortious interference claim, which as outlined above was fully litigated, actually and necessarily decided, and sufficiently identical to the § 523(a)(6) claim, establishes that there are no genuine issues of material fact as to the debt awarded on the tortious interference claim. Further, the Court concludes that all the essential elements of a cause of action for nondischargeability under 11 U.S.C. § 523(a)(6) were found by a preponderance of the evidence in the Superior Court Action and the Superior Court Verdict is entitled to preclusive effect as to Count Three of the Complaint. Guardian is therefore entitled as a matter of law to a determination that the debt owed in connection the tortious interference claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Additionally, because the Superior Court Verdict included a verdict on the unjust enrichment claim, the CUTPA claim, and punitive damages in favor of Guardian based on the same facts on which it found Rossman liable for tortious interference, it follows that the debts

on those claims are likewise nondischargeable under § 532(a)(6). Guardian's Motion for Summary Judgment on Count Three of the Complaint is **GRANTED** and the debt is deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### D.    Count One: Nondischargeability under § 523(a)(2)(A)

In relevant part, § 523(a)(2)(A) excepts from discharge those debts of an individual debtor "to the extent obtained by false pretenses, false representation, or actual fraud." 11 U.S.C. § 523 (a)(2)(A). "This exception is in keeping with the basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018) (quoting *Cohen v. de la Cruz*, 523 U. S. 213, 217 (1998)).

Guardian argues that when the jury found Rossman tortiously interfered with Guardian's contractual relations, it necessarily found that Rossman committed actual fraud under § 523(a)(2)(A). Rossman disagrees with Guardian's proposition and asserts that because Guardian never alleged fraud in the Superior Court Action, Guardian has not established, as a matter of law, that the debts are nondischargeable pursuant to § 523(a)(2)(A). Rossman argues that the Superior Court Verdict lacks specific findings on Rossman's subjective intent and cannot be used as the basis of collateral estoppel for a nondischargeability action. Rossman also argues that the elements of the causes of action in the State Court Action do not correspond to the claims of nondischargeability under federal law. Specifically, Rossman asserts that Guardian can only succeed on its § 523(a)(2)(A) nondischargeability claim if it establishes five elements of fraud nondischargeability.[2] According to Rossman, if Guardian is not able to

---

[2] Rossman cites the case of *Hamrah v. Couloute (In re Couloute)*, 538 B.R. 184, 188 (D. Conn 2015) in support of this proposition. The *Couloute* court noted "Under well-established § 523(a)(2)(A) principles, a plaintiff seeking nondischargeability of its debt must prove each of the following five elements: (1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of

11

establish that it relied on a false representation made by Rossman, Guardian's § 523(a)(2)(A) claim must fail.

Although prior case law required a creditor to prove that it relied on a false representation as an element of a fraud claim, recent United States Supreme Court case law held that reliance on a false representation is not a necessary element of a § 523(a)(2)(A) actual fraud claim. In *Husky International Electronics, Inc. v. Ritz,* the Supreme Court determined that reliance is not required because "actual fraud" encompasses forms of fraud that can be effectuated without a false representation. 136 S. Ct. 1581, 1586 (2017). The Court resolved "an existing split among the Circuits over whether 'actual fraud' requires a false representation or whether it encompasses other traditional forms of fraud that can be accomplished without a false representation. . . ." *Id.* at 1585.

In its analysis, the Supreme Court noted that in the Bankruptcy Reform Act of 1978, Congress added "actual fraud" to § 523(a)(2), which previously only excluded debts obtained by "false pretenses or false representations" from discharge. *Id.* at 1586. The Court presumed that "Congress did not intend for the phrase 'actual fraud' to mean the same thing as 'a false representation.'" *Id.* Finding that "a false representation has never been a required element of 'actual fraud,'" the Court declined to adopt it as a requirement. *Id.* at 1588.

While the Court declined to adopt a definition of fraud "for all times and all circumstances," the Court noted that "'actual fraud' has two parts: actual and fraud." *Id.* at 1586-87. In the context of 'actual fraud,' the word 'actual' denotes the moral turpitude or intentional wrong. *Id.* This distinction sets 'actual fraud' apart from the concept of 'implied fraud' or 'fraud in law,' which include acts of deception that exist ". . .without the imputation

---

deceiving the creditor; (4) the creditor justifiably relied on such representations; and (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made."

of bad faith or immorality." *Id*. The Court further noted that 'fraud' connotes deception or trickery generally. *Id.* at 1586. Therefore, the Court held that "anything that counts as "fraud" and is done with wrongful intent is "actual fraud."" *Id*.

The record in the Superior Court Action established that Rossman devised and carried out a scheme to steal Guardian's customers and divert sales opportunities to his own company, stole computer codes from Guardian to convert Guardian's customer accounts to his own company, obtained and used Guardian's confidential customer lists for his own company, falsely advised Guardian's customers to breach service contracts, and coerced them to switch to his company. When the jury rendered the Superior Court Verdict, it found Rossman's actions were intentional and wrongful, satisfying the 'actual' component of "actual fraud." The facts established in the Superior Court Verdict also demonstrate that Rossman's actions were intentionally carried out by deceit, artifice, trick, or design to cheat Guardian out of its customers and its business operations. Rossman's deliberate actions accomplished by deception and trickery satisfy the 'fraud' component of "actual fraud" under *Husky*. There is no genuine issue of material fact regarding whether Rossman's actions were part of a scheme undertaken with the specific design to cheat Guardian of its customers and business.

This Court concludes that there is a sufficient identity of issues between Count One of the Complaint and the Superior Court Verdict. The Court also finds that Rossman's conduct meets the definition of 'actual fraud.' The jury actually and necessarily decided that Rossman stole Guardian's customers, stole computer codes, obtained and used confidential customer lists, and falsely advised Guardian's customers to switch to his company as part of a scheme to cheat Guardian. As such, Guardian's Motion for Summary Judgment on Count One of the Complaint seeking that the debt owed to it by Rossman be deemed nondischargeable pursuant

to 11 U.S.C. § 523(a)(2)(A) is **GRANTED** and Rossman's Motion for Summary Judgment is **DENIED.**

    **VII.**   **Conclusion**

For the reasons enumerated above, the debt owed to Guardian is deemed **NONDISCHARGABLE** pursuant to 11 U.S.C. §§ 523(a)(6) and 523(a)(2)(A). A judgment will enter on Counts One and Three of the Complaint in accordance with this Memorandum of Decision. A Status Conference will be held on August 13, 2019, at 11:00 a.m. to address Count Two of the Complaint.

Dated at Bridgeport, Connecticut this 24th day of July, 2019.

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut